IN THE SUPREME COURT OF TEXAS









IN THE SUPREME COURT OF TEXAS

 

════════════

No. 04-1103

════════════

 

SAS Institute, Inc.,

Petitioner,

 

v.

 

John W. Breitenfeld

Respondent

 

════════════════════════════════════════════════════

On Petition for Review from the

Court of Appeals for the Fifth District of
Texas

════════════════════════════════════════════════════

 

 

PER
CURIAM

 

 

The trial court in this case granted SAS Institute’s
motion for summary judgment, requiring John Breitenfeld
to repay a bonus on a cancelled sale based on a commission contract between the
two parties. The court of appeals reversed and rendered judgment on Breitenfeld’s motion for summary judgment against SAS,
allowing Breitenfeld to keep the bonus under the
commission contract. We hold the contract language is unambiguous and Breitenfeld is required to pay back the bonus he received
because the sale on which the bonus was based was cancelled. Accordingly, we
reverse the court of appeals’ judgment and reinstate the judgment of the trial
court.

Breitenfeld joined SAS,
a software company, as a sales representative in April of 2001. As part of his
employment he signed a commission contract that provided for compensation based
on his sales of SAS’s products. In December 2001, Breitenfeld received sales credit for a one million dollar
sale to Methodist Healthcare System. Accordingly, in February and March of
2002, he was paid a substantial bonus for the sale. But in April of 2002,
Methodist Healthcare cancelled its order. Breitenfeld
resigned his employment with SAS the following June, without refunding the
bonus he had received for the Methodist Healthcare sale. SAS demanded repayment
of the bonus, and Breitenfeld refused to pay. SAS
sued, and both parties filed motions for summary judgment.

SAS argues the clear language of the commission
contract, when read as a whole, requires repayment of the bonus. We agree. When
both parties file motions for summary judgment in the trial court, the
appellate court determines all presented questions and renders judgment. Guynes
v. Galveston County, 861 S.W.2d 861, 862 (Tex. 1993); Jones v. Strauss,
745 S.W.2d 898, 900 (Tex. 1988). A summary judgment movant
must prove there is no genuine issue of material fact to prevail on his motion.
State Farm Fire and Cas. Co. v. Vaughan, 968 S.W.2d 931, 932
(Tex. 1998); Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548B49
(Tex. 1985). “If the written instrument is so worded that it
can be given a certain or definite legal meaning or interpretation, then it is
not ambiguous and the court will construe the contract as a matter of law.” Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); see Vaughan, 968 S.W.2d
at 932. The contract in this case is unambiguous. It states that bonuses will
be paid only for new sales credit and that cancelled contracts will be followed
by a deduction or repayment of any bonuses paid.

The intent of a contract is not changed simply
because the circumstances do not precisely match the scenarios anticipated by
the contract. The contract in this case envisioned scenarios where the bonus
would be paid back if a sale was cancelled after Breitenfeld
terminated employment, or where the bonus would be deducted from future sales
credit or paychecks if he was employed with SAS when the contract was
cancelled. The clear intent of the agreement is that a bonus is only owed on a
completed, uncancelled sale. But a court interprets a
contract by ascertaining the true objective intentions of the parties, based on
the contract language. Coker, 650 S.W.2d at 393.
“No single provision taken alone will be given controlling effect; rather, all
the provisions must be considered with reference to the whole instrument.” Id.;
see Stine v. Stewart, 80 S.W.3d 586, 589 (Tex. 2002). The relevant
provisions of the commission contract in this case say the following:

 

If
a bonus payment is made to a sales rep and subsequently, sales order(s) that
were part of the bonus calculation are cancelled,
refunded, or the invoice is credited, sales credit for the cancelled sales will
be deducted from the sales rep’s current sales credit. At the end of the sales
year, if an overpayment in bonus has been made, the overpayment will be
deducted from bonuses earned in 2003.

 

If
a sales rep terminates employment with SAS Institute and subsequently, sales
order(s) that were part of the bonus calculation are cancelled, refunded, or
the invoice is credited, the sales rep will be required to pay back to SAS
Institute the portion of the bonus that was paid based upon the cancelled
sales.

 

If a bonus is paid based on a sale and the sale is cancelled, the
sales representative is required to repay the bonus to the company, either
through deduction from his paychecks or by direct repayment. Since Breitenfeld resigned his employment before SAS was able to
recover the bonus by deducting it from his future paychecks, Breitenfeld is required to repay SAS under the unambiguous
terms of the contract.

Accordingly, without hearing oral argument, we
grant the petition for review, reverse the court of appeals’ judgment granting Breitenfeld’s motion for summary judgment, and reinstate
the trial court’s judgment.

 

OPINION DELIVERED: July 1, 2005